Mills *v.* Learn.

---

WILLIAM A. MILLS, Appellant, *v.* M. M. LEARN, Respondent.

*Appeal from Douglas County.*

1. The riparian owner is not the exclusive owner of the ferry right.
2. By statute he is preferred in the conferring of that franchise.
3. Ferry landings in the line of a continuous highway are a part of that highway.
4. The right and ownership of the ferry upon a public highway carries with it the right to land upon the banks.
5. What would be a consent for, or waiver of, such use.

THE complaint alleges that a properly established highway runs through plaintiff's premises, and that the Umpqua river crosses said highway on those premises; that defendant properly obtained a license to keep a ferry across that river, and the injuries complained of are that defendant used the

banks of the Umpqua river, within the lines of the public road, as places for landing from his ferry boats, and for tying up the same, without first obtaining permission; and wrongfully and unlawfully continued and threatened to continue so to use the said banks; that plaintiff never had received any compensation for such use. Plaintiff prayed for a decree, enjoining defendant from committing such trespasses. Defendant demurred to the complaint for insufficiency, and after argument the court below sustained the demurrer, and dismissed the complaint. Plaintiff appealed, and the cause stands on demurrer to complaint, and the error alleged in sustaining the same.

*Kelsay & Watson,* counsel for appellant.

1st. Private property cannot be taken for public use, without compensation first assessed and tendered. (*Const. of Oregon, article* 1, *section* 18.)

2d. The soil under a public highway is the property of the owner of the fee, subject to the public easement, which is only the right to travel over the land. (16 *N. Y.*, 97; 20 *Wend.*, 111–133; 23 *N. Y.*, 61; 24 *N. Y.*, 658; 25 *N. Y.*, 526.)

3d. The use of the termini of the road on the banks of a river, for landing places for a ferry, is an additional servitude, and requires additional assessment and compensation. (2 *Hil. Real Prop.*, *page* 45, *sections* 21, 22; *Angell on Highways*, *paragraph* 304; *Am. Law. Reg.*, *July*, 1865, *page* 522.) The proper remedy is by injunction. (16 *N. Y.*, 97.)

*W. R. Willis, Esq.*, counsel for respondent:

1st. Laying out highway, compensation, &c., *Code, page* 859; and this includes all incidents necessary for travel.

2d. County Courts may license a ferry, *Code*, 868, *sections* 40–42; and the laying out of road and granting license for ferry gives the grantee a right to land his boats in the highway. (3 *Kent Com.*, *n.*, *p.* 421; 4 *Am. Law Reg.*, *No.* 9, *pages* 516–17; 1 *Oregon*, 35.)

3d. Owner of land has the first right to keep the ferry, and neglecting to apply waives that right. (*Code*, 869, *sections* 44, 45, 46, 50.)

4th. Appellant has been compensated for the right of way across his land, including ferry landing, and has consented that another should have the ferry.

WILSON, J. At the December term, 1853, in the case of *Grant* v. *Drew*, 1 *Oregon R.*, 35, the Supreme Court of Oregon territory decided several questions which arise in this case. Under the law then, the proprietor of the land adjoining or embracing any water course, over which a ferry might be established, had the preference, if he made application, over others, to keep the ferry. The present law, *Code*, 869, *section* 42, declares not only a similar preference, but that no license shall issue to another unless, after notice of such application in writing, given to the riparian owner at least ten days prior to the term of court, such owner fail to appear and claim such license. That court declared that Grant, the riparian owner, had not the exclusive right to the ferry, and that he had failed to designate his preference to claim his right at the proper time, and it had been rightly conferred on another. After a full examination of the authorities, we here re-affirm the conclusions then made, that when a public highway crosses a stream of water it is not interrupted, but the water, and the soil beneath it, within the limits of the road, are a *continuous part* of the road; that when necessary for the proper use and enjoyment of the highway by the public, the ferries and bridges are also parts and parcels of the road. The present law provides for no terminations of a road, except the places of commencement and ending; the survey is continuous; if streams of water intervene, they are not deemed interruptions, for the survey continues over them as though they did not exist, and the distance is no greater or less by reason of their happening. Within the continuous limits, the public are entitled to have the way made safest for tra-

vel; to have hills lessened, forests removed, embankments made, and naturally impassable places made passable by bridge or ferry. From the varied adjudications hitherto on this subject, the general drift tends to the doctrine which we enunciate as the law in Oregon. Our statute recognizes fully the rule in our *Constitution, article* 1, *section* 18, and makes ample provision to compensate persons for those privileges, in respect to roads, which the public require. Public interests demand a safe and free right of travel through and over the whole length of a highway. The owner of lands, through which it may pass, has been notified that the public requires its location. He is well aware of the place of entrance upon, and exit from his premises, and the general course thereon; of the necessity of a ferry or bridge he is certainly apprised; and, with a full knowledge of the claim for a practicable road, of the acts needed to make it such, and of all the incidents therewith connected, he makes a claim for damages for the full and perfect location of the highway; and nowhere does the statute contemplate a claim for partial damages. He knows the extent of injury; knows, too, that by statute, he stands secure of the right to keep any ferry on or adjacent to his lands, if he deem it of any sufficient value. It would be strange if, with all this knowledge, with these rights, he could afterwards say to the public that it had not compensated him for the privilege of using the ground at the edge of a stream in the road for the landing of those boats, which the competent authority deems best fitted for the convenience of the public. If his general claim for damages has been adjusted, or if he have failed to make such claim, we deem that he has received constitutional compensation for the laying out of the road, and all its incidents. He had, we affirm, no natural rights, except the right of landing upon the banks of the stream, and the right to a private ferry; certainly the claim for damages covers the former, and the latter is still his privilege, though a public ferry be established. The land under the water, as well as the land at the edge of the stream,

is subject to the incumbrances of a highway, and their uses differ not; there is no line in a highway, on the different sides of which there are different rights or incumbrances. The franchise of a ferry rests with the State, and the right to locate a road is vested in the same authority, and both powers are jointly used in locating a highway, if necessary, and damages are claimed for the exercise of both, if claimed at all.

A brief reference to authorities sustains this view. In *Peters* v. *Kendall*, 6 *Barn. & Cress.*, 703 (1827), the English courts held that the owner of the ferry need not have the property in the soil on either side; it was sufficient that the landing place was a public highway; it was a right incident to the ferry to use such landing place for the purposes of a ferry. Virginia authorities go very far that way. (*Somerville* v. *Wimbish*, 7 *Grat.*, 205; *Patrick* v. *Ruffner*, 2 *Rob.*, 209.) So *Mills* v. *Commissioners*, 3 *Scam.*, 53, and from the collation of authorities, carefully made, Chancellor Kent, in the third volume of his Commentaries, note to page 421, declares this the better doctrine, that "this is the most reasonable conclusion upon the right to the use of a public highway to which a ferry is connected." The cases cited by counsel for appellant go mainly to this point, that a highway being established, and the public and the land owner having acquired rights and privileges incident thereto, such use and such rights cannot be taken by a private or public corporation for particular purposes, or be diverted to other and inconsistent uses, without compensation for such appropriation or diversion. To that doctrine we cheerfully subscribe; but those cases do not apply here. We deem the ferry a part of the road; without it, the road is useless, and the location has failed in its object. The landings are upon the highway and within its lines, and the distinction is a very shadowy one, between stepping from the land upon a boat, and from thence upon the land, and stepping from land to land, especially when all valuable rights are saved in other ways by our laws, perhaps as a part of a

compensation to the land owner. The owner of the land cannot go upon that landing and build abutments, or lay a wharf. Surely no diversion of use has been made, no appropriation different from the first great purpose of having a safe and speedy line for public travel and convenience. While this view decides the case in question, there is another feature which belongs specially to this case.

If the right to land from a ferry boat on a highway upon appellant's land was his own, and not to be taken without compensation, certainly the public has notified him that an appropriation of that right was demanded, and by as strict a course of procedure as in laying out a highway, he was notified that, upon a certain time it would be appropriated, unless he appeared and received that which would be in every view a compensation, viz.: The receiving of that franchise from the State which could only make the landing place of any value to him; compensation was assessed and tendered then. The law declares that he shall be preferred. He has no right to have a public ferry in any way, without that franchise; the landing is to him of no value otherwise. If, then, conscious of that claim of appropriation to public use of his lands, he fail to appear and obtain, not only the value of landing from the stream, but also an exclusive ferry right, does he not waive any claim to compensation? Does he not declare that it is of no sufficient value to compensate him for the trouble of asking for his rights? Or, does he not consent that what might be of value to him, may be given to another? And no court would hold other than that he had consented to such use. In this case the full compliance with the law had been made, and appellant had suffered such a course, when fully conscious of its effect. In either view we have taken the judgment of the court below should be affirmed.